UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CLAUDIA GROUX,

                                        Plaintiff,

                    v.                                        1:02-CV-1178
                                                                (FJS/DRH)
LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON,

                                        Defendant.
_____

**APPEARANCES**                                      **OF COUNSEL**

**OFFICE OF CRAIG MEYERSON**        **CRAIG MEYERSON, ESQ.**
Airport Park
17 British American Boulevard
Latham, New York 12110
Attorneys for Plaintiff

**BOND, SCHOENECK & KING, PLLC**    **ARTHUR J. SIEGEL, ESQ.**
111 Washington Avenue                       **WILLIAM E. REYNOLDS, ESQ.**
Albany, New York 12210-2280
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Currently before the Court are Defendant's motion for summary judgment and Plaintiff's cross-motions for summary judgment, declaratory judgment, attorney's fees and to amend the complaint. Plaintiff asserts claims under the Employee Retirement Income Security Act

("ERISA") against Defendant for wrongful termination of disability benefits.[1]

## II. BACKGROUND

**A.    Factual History**

Plaintiff, a telemarketer for Taconic Plastics, experienced an inferior wall myocardial infarction in January of 1997. Defendant received Plaintiff's claim for long-term disability benefits in June of 1997. On August 5, 1997, Defendant sent Plaintiff a letter stating that Plaintiff's claim for "Long Term Disability (LTD) benefits ha[d] been approved, based on [her] inability to perform the duties of [her] occupation." *See* Declaration of C. Meyerson, Esq. dated August 8, 2006 ("Meyerson Decl."), Exhibit "J," at CL0308. The letter also stated the following: "Thank you for notifying us of your return to work on a part-time basis. You fall under the 'Partial Disability' provision of your Long Term Disability policy . . . ." *See id.*, Exhibit "J," at CL0309.[2]

On November 12, 2001, Defendant told Plaintiff via telephone that her benefits had been

---

[1] The Court previously denied dispositive motions from both parties and remanded the case to Defendant for a full and fair review. The instant motions relate to Defendant's decision on remand.

[2] The Claim Notes in the record reaffirm that Defendant was paying Ms. Groux a "partial disability benefit." *See* Meyerson Decl., Exhibit "J," at CL 0022. During the period Defendant was paying benefits to Plaintiff, Defendant, for unexplained reasons, sent Plaintiff three letters referencing three different policies (none citing the correct policy language) regarding a change in definition of disability. *See* Meyerson Decl., Exhibit "J," at CL0201-02, Letter from L. Hamlin to C. Groux dated February 3, 2000 (citing a Taconic Plastics Long Term Disability Policy with a thirty-six month own occupation benefit); *see id.* at CL0064-65, Letter from L. Hamlin to C. Groux dated April 7, 2000 (citing a Quebecor World Long Term Disability Policy with a thirty-six month own occupation benefit); *see id.* at CL0155-56, Letter from M. Bruneau to C. Groux dated June 4, 2001 (citing a Bic Corporation policy with a twenty-four month own occupation benefit).

terminated and that she had a right to request a review of the claim. *See* Memorandum-Decision and Order dated March 28, 2005, at 4. On November 16, 2001, Defendant sent Plaintiff a letter informing her that she was not entitled to benefits, explaining the denial and noting her right to seek an appeal. *See* Meyerson Decl., Exhibit "J," at CL0119-22, Letter from M. Bruneau to C. Groux dated November 16, 2001. This letter cites a definition for "'Disability' or 'Disabled'" that does not appear in the policy and is similar to the definition of "Total Disability" in the controlling policy. *See id.* at CL0119.

On January 15, 2002, Plaintiff, through her attorney, sent a letter as Notice of Appeal and Appeal of the decision to terminate benefits. *See* Meyerson Decl., Exhibit "J," at CL0057-60, Letter from C. Meyerson, Esq. to M. Cook dated January 15, 2002. In the letter, Mr. Meyerson stated: "It must be noted that Ms. Groux is not claiming under 'Total Disability' or 'Totally Disabled'. Ms. Groux is claiming under 'Partial Disability' or 'Partially Disabled'."[3] *See id.* at CL0059.

On March 8, 2002, Defendant sent Plaintiff a letter upholding its previous denial of benefits. *See* Meyerson Decl., Exhibit "J," at CL0046-49, Letter from S. Colinet to C. Meyerson, Esq. dated March 8, 2002. In its letter, Defendant cited the correct Partial Disability provisions from the controlling policy, *see id*. at CL0046, and the letter consistently referred to the terminated benefits as benefits for partial disability, *see id*. *passim*.

---

[3] Mr. Meyerson also states in this letter that the letter "is not to be viewed as an admission of any sort, or waiving or limiting any legal rights, claims or assertions of the claimant." *See* Meyerson Decl., Exhibit "J," at CL0057.

B. **Long Term Disability Policy**

The policy includes the following provisions pertinent to the discussion below:

SECTION II - DEFINITIONS

\* \* \*

PARTIAL DISABILITY or PARTIALLY DISABLED means as a result of the sickness or injury which caused total disability, the insured is:

(1) able to perform one or more, but not all, of the material and substantial duties of his own or any other occupation on a full-time or a part-time basis; or

(2) able to perform all of the material and substantial duties of his own or any other occupation on a part-time basis.

To qualify for a partial disability benefit the insured must be earning less than 80% of his predisability income at the time partial disability employment begins.

\* \* \*

TOTAL DISABILITY or TOTALLY DISABLED means during the elimination period and the next 24 months of disability the insured is:

(1) unable to perform all of the material and substantial duties of his occupation on a full-time basis because of a disability:

(a) caused by injury or sickness;
(b) that started while insured under this coverage; and

(2) after 24 months of benefits have been paid, the insured is unable to perform with reasonable continuity all of the material and substantial duties of his own or any other occupation for which he is or becomes reasonably fitted by training, education,

experience, age and physical and mental capacity.

\* \* \*

SECTION IV - BENEFITS

\* \* \*

PARTIAL DISABILITY

When proof is received that an insured is partially disabled from a sickness or injury following a period of total disability for which benefits were payable, the Company will pay a partial disability benefit if the insured:

    (1)    is partially disabled within 31 days of the date his total disability benefits cease; and

    (2)    gives to the Company upon request and at the insured's expense proof of continued:
        (a)    partial disability, and
        (b)    regular attendance of a physician.

\* \* \*

TERMINATION OF THE TOTAL DISABILITY MONTHLY BENEFIT

The total disability monthly benefit will cease on the earliest of:

    (1)    the date the insured ceases to be totally disabled; or

    (2)    the date the insured dies; or

    (3)    the end of the maximum benefit period.

TERMINATION OF THE PARTIAL DISABILITY MONTHLY BENEFIT for a 24 month Own Occupation Benefit is as follows:

The partial disability monthly benefit will cease on the earliest of:

    (1)    the date the insured ceases to be partially disabled; or

> (2)  the date the insured dies; or
>
> (3)  the end of the maximum benefit period; or
> (4)  24 months.

*See* Meyerson Decl., Exhibit "K."

### C.  Procedural History[4]

This Court issued a Memorandum-Decision and Order addressing Defendant's motion for judgment on the administrative record and Plaintiff's cross-motion for summary judgment and for a declaratory judgment. *See* Memorandum-Decision and Order dated March 28, 2005, at 1-2. At that time, the Court determined that a *de novo* standard of review applied and that there was good cause for the Court to consider evidence outside of the Administrative record in conducting its *de novo* review. *See id.* at 4-5, 9. After thoroughly discussing and evaluating the evidence, the Court found "that there [was] a genuine issue with respect to whether Plaintiff [was] partially disabled under the terms of the policy." *See id.* at 9-19. Therefore, the Court denied both parties' motions for summary judgment and remanded the case to Defendant for another review to (1) "give [Plaintiff] an opportunity to present additional evidence . . . to show that she is partially disabled;" (2) avoid the expense of a bench trial; (3) and limit bench trials to cases with significant conflict-of-interest concerns. *See id..*[5]

---

[4] Plaintiff originally filed this action in state court for breach of contract, insufficient denial, promissory estoppel and for declaratory judgment seeking unpaid benefits, attorney's fees, and costs. *See* Notice of Removal, Exhibit "A," Summons and Complaint. Defendant removed the action to this Court on the ground that ERISA governed Plaintiff's claims. *See* Notice of Removal at ¶ 3.

[5] The parties both moved for reconsideration of the Court's March 28, 2005 Order. The Court treated Defendant's motion as a motion to clarify and clarified that "the only evidence that
(continued...)

After remand, on September 19, 2005, Defendant informed Ms. Groux that it would not alter its original decision to deny benefits after a full and fair review of Ms. Groux's partial disability claim. *See* Meyerson Decl., Exhibit "I," Letter from C. Frasier to C. Meyerson, Esq. dated September 19, 2005, at 1. The letter stated that, in the 2002 initial review, Defendant had previously found that Ms. Groux had the capacity to work a full-time sedentary position, identified several such positions, and found that Ms. Groux did not meet the definition for partial or total disability and that her claim was properly denied. *See id.* at 2-3. The letter, after describing the review conducted on remand including another independent peer review, again stated that Ms. Groux was capable of performing a full-time sedentary occupation and was therefore not totally or partially disabled under the policy and that, therefore, her claim for partial disability benefits was denied. *See id*. at 5.

In this letter, Defendant, for the first time, provides an alternative ground for denial based on the termination of benefits provisions in the policy. *See id.* at 5-6. The letter notes that Defendant had paid Ms. Groux partial disability benefits from July 10, 1997, through November 12, 2001. *See id*. at 5. The letter, citing the termination provision of the policy, concludes that partial disability benefits cease on the earliest of several conditions, including twenty-four months of benefits. *See id.* at 6. Based on this provision, Defendant concludes that Ms. Groux's

---

⁵(...continued)
is probative of the issue of whether Defendant's denial of benefits was proper is evidence that was in existence as of March 8, 2002," although the Court noted that the documents themselves need not have been in existence on that date. *See* Memorandum-Decision and Order dated June 20, 2005, at 3-4. Plaintiff sought reconsideration because she had sought attorney's fees and the Court had not addressed that issue. *See id* at 4-5. The Court found that its consideration of attorney's fees was best postponed until after Defendant's reconsideration and subsequent judicial proceedings, if any. *See id.* at 5.

partial disability benefits should have terminated as of July 10, 1999, and were continued due to administrative error for approximately twenty-seven months of additional payment.[6] *See id.*

On June 30, 2006, Defendant filed its current motion for summary judgment. In response, Plaintiff filed a cross-motion for summary judgment and declaratory judgment and a cross-motion to amend the complaint.

### III. DISCUSSION[7]

**A.     Motions for Summary and Declaratory Judgment**

Defendant moves for summary judgment on two grounds: (1) that Plaintiff is not disabled and (2) that Plaintiff, if eligible for any benefits, is only eligible for partial disability and those benefits have terminated. To the contrary, Plaintiff argues that she is entitled to summary judgment and declaratory judgment because she is disabled and entitled to benefits under the policy.

*1. Disability benefits under the policy*

"On *de novo* review, unambiguous language in an ERISA plan must be interpreted and enforced 'according to its "plain meaning."'" *Connors v. Conn. Gen. Life Ins. Co.* 272 F.3d 127, 137 (2d Cir. 2001) (quoting *Aramony v. United Way of Am.,* 254 F.3d 403, 412 (2d Cir. 2001)

---

[6] Defendant does not seek reimbursement for the twenty-seven months of payments that it made allegedly in error. *See* Defendant's Memorandum of Law at 16.

[7] As noted the Court previously found that the standard of review under the policy is *de novo*. *See* Memorandum-Decision and Order dated March 28, 2005, at 4-5. The Court also previously determined that it would consider evidence outside the Administrative Record in its *de novo* review of Plaintiff's claim. *See id.* at 9.

(quoting *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 149 (2d Cir. 1999))). Thus, courts cannot read additional terms into unambiguous contracts. *See Connors*, 272 F.3d at 137 (citation omitted). "Whether contract language is ambiguous is a question of law that is resolved 'by reference to the contract alone.'" *O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc.*, 37 F.3d 55, 58-59 (2d Cir.1994) (quoting *Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 527 (2d Cir. 1990)). Ambiguous language "'"is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement."'" *Aramony v. United Way of Am.*, 254 F.3d 403, 412 (quotation omitted).

The plan language in this case, although less clear than it could be, unambiguously provides that partial disability benefits terminate after, among with other conditions, twenty-four months. The policy also clearly provides that partial disability follows total disability and that as long as someone is partially disabled, she cannot simultaneously be totally disabled.

The policy is a "Group Long Term Disability Policy" that provides for two types of long term disability insurance benefits: a total disability benefit and a partial disability benefit. *See* Meyerson Decl., Exhibit "K." A reasonably intelligent person viewing the contract objectively must conclude that any claim under the policy for "long term disability benefits" or "disability benefits" means either or both total and partial disability benefits.

The total disability benefit is based on a two-tiered definition of total disability: an "own occupation" definition that applies during the first twenty-four months of disability after the elimination period and an "any occupation" definition that applies after twenty-four months of

benefits have been paid.  *See id.* (emphasis added).[8]

The partial disability definition only applies after a sickness or injury causes total disability.  The policy offers two definitions of partial disability "(1) able to perform one or more, but not all, of the material and substantial duties of his own or any other occupation on a full-time or a part-time basis; or (2) able to perform all of the material and substantial duties of his own or any other occupation on a part-time basis." *See id.* (emphasis added).  The partial disability benefit terminates after, among other conditions, twenty-four months.

Furthermore, the partial disability definition must be read in conjunction with the total disability definition as partial disability must "follow[] a period of total disability for which benefits were payable." *See id.*  The partial disability benefit is only available under the policy during the first twenty-four months ("own occupation" period).  The "own occupation" definition and the partial disability benefit terminate at the same time (twenty-four months).  The partial disability definition, unlike the "own occupation" total disability definition, does not expire after twenty-four months; although the partial disability benefits do expire.

Plaintiff argues that she is both partially and totally disabled.  The Court rejects this argument because the policy provision that requires that partial disability must follow total disability would make little sense if someone could be both totally and partially disabled.  Additionally, if someone could be both partially and totally disabled, then the partial disability portion of the policy would be superfluous.

---

[8] The Court also notes that both partial disability definitions and the "own-occupation" total disability definition that applies during the period when partial disability benefits are available all specify part-time, full-time, or both.  The "any occupation" total disability definition does not specify.

The Court finds that, although the policy at issue is not a model of clarity, a reasonably intelligent person objectively reviewing the entire policy would find that it is subject to only one meaning. Specifically, that reviewer would have to conclude that a person who meets the definition of partial disability[9] is not totally disabled and is not eligible for total disability benefits. That same reviewer would also have to conclude that the unambiguous language of the termination provision provides that partial disability benefits last for twenty-four months under the policy.[10]

It is undisputed that Plaintiff is capable of working at her occupation part-time[11] and that Plaintiff has received more than twenty-four months of partial disability benefits. Accordingly, the Court finds that, under the policy, Plaintiff cannot be totally disabled or receive total

---

[9] Additionally, the Court notes that Plaintiff's counsel, in Plaintiff's appeal letter, specifically noted for Defendant that Plaintiff was seeking partial disability benefits. *See* Meyerson Decl., Exhibit "J," at CL0057, CL0059-60, Letter from C. Meyerson, Esq. to M. Cook dated January 15, 2002 ("It must be noted that Ms. Groux is not claiming under 'Total Disability' or 'Totally Disabled'. Ms. Groux is claiming under 'Partial Disability' or 'Partially Disabled'."). Defendant's records and letters (when discussing the correct plan) also indicate that Plaintiff was receiving partial, and not total, disability benefits. *See supra* "Background," at 1, 4-5.

[10] Plaintiff has not presented a reasonable alternative and consistent interpretation of the policy other than to note that the plan provides for total disability benefits after the twenty-four month partial disability period and that "[l]ong-term benefits, although not defined in the policy or plan, must certainly be available for a period greater than 24 months." *See* Plaintiff's Memorandum of Law at 14-15. The Court agrees that the plan provides for total disability benefits for a period longer than twenty-four months and thus agrees that long-term benefits are "available for a period greater than 24 months," but not to an insured who is partially, and not totally disabled. The Court again notes that the long term disability plan, while not defining "long-term disability" defines two types of disability – total and partial. The plan sets limits on the benefits available to insureds who meet either definition.

[11] It is undisputed that Plaintiff is able to and is performing her own occupation part time. The parties dispute whether Plaintiff is capable of performing a full-time sedentary occupation. However, the Court need not decide this issue because it finds that Plaintiff is not entitled to benefits based on the undisputed facts.

disability benefits and that Plaintiff is at-most partially disabled and that the partial disability benefits have terminated. Therefore, based on Plaintiff's ability to work part-time and the benefits already paid, the Court finds that Plaintiff is not entitled to any benefits under the policy and that Defendant's denial of benefits was proper.

### *2. Waiver*

It appears that Plaintiff argues that Defendant has waived the defense of termination of benefits because it did not raise this defense as a reason for denial in its answer or at any time prior to remand in this action. Although an insurer may be barred from raising defenses not asserted in communications to the insured denying coverage, the doctrine of waiver is inapplicable "'where the issue is the existence or nonexistence of coverage (e.g., the insuring clause and exclusions). . . .'" *Juliano v. Health Maint. Org of N.J., Inc.*, 221 F.3d 279, 288 (2d Cir. 2000) (quoting *Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692, 698, 435 N.Y.S.2d 972, 975, 417 N.E.2d 84, 87 (1980)). The Court in *Juliano* found that medical necessity was required for coverage under the terms of the contract and was, therefore, analogous to the existence or nonexistence of coverage. *See id*; *c.f. Lauder v. First Unum Life Ins. Co.*, 284 F.3d 375, 381 (2d Cir. 2002) (distinguishing *Juliano* and finding waiver of the right to contest disability, where the insurance company was aware of a claim of disability and chose not to investigate it and noting that the holding is limited "to the circumstances of this particular claim"). The court also noted that, if all possible defenses had to be raised under the notice provisions of ERISA, denial letters would become "meaningless catalogs of every conceivable reason" for denial. *Juliano*, 221 F.3d at 288.

Under *Lauder* to determine whether a defense is waivable, a Court should consider whether waiver would expand coverage beyond the original contract and, if not, whether waiver would pose the policy risk of eliminating the usefulness of ERISA notices. *See Keiser v. CDC Inv. Mgt. Corp.*, No. 99 Civ. 12101, 2003 WL 1733729, *5-*6 (S.D.N.Y. Mar. 25, 2003) (finding an alleged insufficient investigation of disability insufficient to waive the defense of lack of disability); *Hine v. Hewlett-Packard Co.*, No. 04-CV-476, 2006 WL 2739697, *3 (N.D.N.Y. Sept. 25, 2006) (finding that payment of benefits does not constitute waiver (or estoppel) of a defense for lack of coverage, as waiver of the defense would expand the policy beyond the original bargain); *Doe v. Cigna Life Ins. Co. of N.Y.*, 304 F. Supp. 2d 477, 497 (W.D.N.Y. 2004) (finding no legal foundation for waiver of defenses, that the plaintiff was not disabled and not a covered person, because a finding of waiver would expand the policy beyond the original bargain); *cf. Shutts v. First Unum Life Ins. Co. of Am.*, 310 F. Supp. 2d 489, 494 (N.D.N.Y. 2004) (finding waiver of the right to dispute the timeliness of a notice of claim as "failure to timely file proof of loss does not expand the policy so as to extend its coverage to more than originally planned").

The Court finds that Defendant cannot waive the defense that, under the policy, the partial disability benefit terminates after twenty-four months because to award partial disability benefits beyond twenty-four months would impermissibly expand the scope of coverage to a term longer than the original bargain.[12] Similarly, to the extent that Plaintiff hints at an estoppel argument, under the reasoning of *Hine*, Defendant's payment of benefits beyond the twenty-four-

---

[12] The Court notes that Defendant has represented that it will not seek repayment of the benefits paid beyond twenty-four months

-13-

month limitation does not preclude Defendant, via estoppel, from now asserting the twenty-four-month limitation as a ground for denial of benefits.

**B.    Plaintiff's motion to amend**

Plaintiff seeks leave to amend her complaint to add claims for total disability benefits, long term disability benefits, and disability benefits. Defendant argues that, in light of the termination of benefits discussed *supra*, the Court should deny Plaintiff's motion to amend as futile.

A court should freely grant leave to amend a pleading when justice so requires. *See* Fed. R. Civ. P. 15(a)(2). A court should obey Rule 15's direction "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility. . . ." *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) (citing *Foman* [*v. Davis,*] 371 U.S. [178,] 182, 83 S. Ct. 227 [(1962)]). Where a party cross-moves to amend in response to a summary judgment motion and the parties have briefed the issue and presented all relevant evidence in support of their positions, the Court may deny a claim, valid on its face, as futile under the Rule 56 summary judgment standard. *See Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110-11 (2d Cir. 2001) (affirming district court's denial of motion to amend for futility because the proposed amendment "could not withstand an inevitable motion for summary judgment").[13]

---

[13] Additionally, the Court notes that this District's local rules require "[a] party moving to amend a pleading pursuant to Fed. R. Civ. P. 14, 15, 19-22 must attach an unsigned copy of the proposed amended pleading to its motion papers." Local R. 7.1(a)(4). Moreover, these rules require that the party specifically set forth the amendments and the identify the amendments in
(continued...)

The Court finds that Plaintiff's proposed amendment, seeking to recover "total disability benefits, long term disability benefits, and disability benefits," *see* Plaintiff's Memorandum of Law at 15, is futile under either the Rule 12(b)(6) standard or the Rule 56 standard. Plaintiff, so long as she is able to work part-time, is no longer entitled to any benefits under the policy regardless of whether or not she is able to work a full-time sedentary job. Accordingly, the Court denies Plaintiff's motion to amend as futile.

### C. Plaintiff's motion for attorney's fees

In an ERISA case in this circuit, five factors govern a court's analysis of an application for attorney's fees: "(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' position, and (5) whether the action conferred a common benefit on a group of pension plan participants." *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987) (citation omitted). In light of the Court's decision to grant summary judgment to Defendant, the Court, in its discretion, denies Plaintiff's motion for attorney's fees.

### IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

---

[13](...continued)
the proposed pleading in its motion. *See id*. Plaintiff's failure to comply with Local Rule 7.1(a)(4) would serve as an alternative ground for denying this motion.

**ORDERS** that Plaintiff's cross-motions are **DENIED** in their entirety; and the Court further

**ORDERS** that Defendant's motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court enter judgment for Defendant and close this case.

**IT IS SO ORDERED.**

Dated: September 26, 2008
   Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge